UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARK BARCLAY** | : | Case No. 5:05CV143 |
| Petitioner, | : | |
| | : | Judge Boyko |
| **v.** | : | |
| | : | Magistrate Judge Limbert |
| | : | |
| **MARGARET BRADSHAW,** | : | |
| Warden | : | |
| Respondent. | : | |

## RESPONDENT'S ANSWER/ RETURN OF WRIT

The Respondent denies each of the allegations made by the Petitioner except those expressly admitted herein. The Petitioner, Mr. Mark Barclay, [hereinafter Barclay, or Petitioner], is state prisoner #343-816 at Mansfield Correctional Institution in Mansfield, Ohio. The Respondent is Warden at that institution. Barclay initiated this action seeking a writ of habeas corpus pursuant to 28 U. S. C. Section 2254. Hereinafter, the Respondent shows cause why the writ should not be issued.

Respectfully submitted,

JIM PETRO (0022096)
Ohio Attorney General

s/Stephanie Warner Bircher
STEPHANIE WARNER BIRCHER (0072309)
Assistant Attorney General
Trial Attorney
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 644-7233
Fax: (614) 728-9327
swarnerbircher@ag.state.oh.us

## STATE CONVICTION

Barclay was indicted by the January 2002 Term of the Summit County, Ohio Grand Jury on one count of Aggravated Murder in violation of Ohio Revised Code (O.R.C.) §2903.01(A); two counts of Kidnapping in violation of O.R.C. §2905.01(A)(3); and one count of Abuse of a Corpse in violation of O.R.C. §2927.01. (Exhibit 1, Case No. 2002-02-0305C.) Barclay pled not guilty to the charges in the indictment. (Exhibit 2.) Because several of the co-defendants in Barclay's case made statements derogatory to him, Barclay's trial was severed from the co-defendants. Barclay, through counsels, Kerry O'Brien and Annalisa Stubbs Williams, filed a notice of alibi. (Exhibit 3.) Prior to trial, the prosecution amended count one of the indictment (Aggravated Murder) to the lesser included offense of Murder. The jury trial commenced and on October 24, 2002, Barclay was found guilty as charged. (Exhibit 4.) On October 25, 2002, Barclay was sentenced to fifteen years to life for the murder conviction, eight years for each of the kidnapping convictions, and ten months for the abuse of a corpse conviction[1]. (Exhibit 5.) On October 28, 2002, the court corrected the sentence to impose a sentence for the crime of Murder instead of the Aggravated Murder, as indicated on the October 25, 2002, order. (Exhibit 6.) On November 5, 2002, the court issued a journal entry clarifying that the kidnapping and abuse of a corpse sentences would be served concurrent to each other but consecutive to the murder conviction. (Exhibit 7.)

## DIRECT APPEAL

On November 22, 2002, Barclay, through new counsel, Nicholas Swyrydenko,

---

[1] The original journal entry sentenced Barclay for the crime of Aggravated Murder. The entry was later amended to show a finding guilt and sentence for the lesser included crime of Murder. (Exhibit 6.)

timely filed a notice of appeal. (Exhibit 8, Case No. 21336.) In his brief, Barclay presented the following assignment of error:

    1.    APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

(Exhibit 9.) On June 23, 2003, the State filed its brief. (Exhibit 10.) The court of appeals issued a decision and journal entry on October 15, 2003, and overruled Barclay's sole assignment of error sustaining the judgment of the trial court. (Exhibit 11.)

Barclay, pro se, timely appealed to the Ohio Supreme Court. (Exhibit 12, Case No. 03-2072.) In his Memorandum in Support of Jurisdiction, Barclay presented the following proposition of law:

    1.    WAS APPELLANT'S CONVICTIONS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

(Exhibit 13.) The State filed a memorandum in opposition on December 22, 2003. (Exhibit 14.) On March 3, 2004, the Ohio Supreme Court denied Barclay leave to appeal based upon the jurisdictional memoranda and dismissed the appeal as not involving any substantial constitutional question. (Exhibit 15.)

## APPLICATION FOR REOPENING

In the meantime, on February 2, 2004, Barclay filed an application to reopen his appeal based on ineffective assistance of counsel. (Exhibit 16.) The State did not respond. On February 23, 2004, the court denied his application to reopen for failure to show good cause for the untimely filing. (Exhibit 17.)

On March 19, 2004, Barclay filed a pro se notice of appeal to the Ohio Supreme Court and a Memorandum in Support of Jurisdiction. (Exhibit 18, Case No. 04-0493.)

The State filed a memorandum in opposition. (Exhibit 19.) On May 26, 2004, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Exhibit 20.)

## FEDERAL HABEAS CORPUS

Barclay is now before the Federal Habeas Court, on a petition filed on January 27, 2005, seeking a writ of habeas corpus pursuant to 28 U. S. C. Section 2254. He asserts the following grounds for relief:

> **GROUND ONE:** PETITIONER WAS TWICE TRIED AND CONVICTED OF THE SAME OFFENSE, IN VIOLATION OF DOUBLE JEOPARDY PROHIBITION.
>
> **Supporting FACTS:** Multiple charges arising from the same conduct resulted in multiple convictions for the same offense of kidnap. Petitioner was further tied for aggravated murder after the charge was amended to murder and the aggravated murder charge dismissed. And multiple judgment entries rendering judgment of conviction for aggravated murder and murder were issued.
>
> **GROUND TWO:** PETITIONER'S INDICTMENT WAS CONSTRUCTIVELY AMENDED, DUPLICITOUS AND MULTIPLICITOUS, AND FAILED TO GIVE REASONABLE NOTICE OF THE SUBSTANCE OF THE CHARGES AGAINST HIM, IN VIOLATION OF HIS RIGHT TO INDICTMENT UNDER THE FIFTH AM.
>
> **Supporting FACTS:** The indictment in this case was amended from aggravated murder to murder prior to trial, but Petitioner was tried and convicted of aggravated murder under a different theory (felony in place of prior calculation and design.) In addition multiple counts of kidnap were charged from a single incident.
>
> **GROUND THREE:** PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.
>
> **Supporting FACTS:** Trial counsel failed to raise any objections to the improper indictment, or the improper judgment of conviction and sentence as evidenced by multiple nunc pro tunc entries by the trial court correcting multiple mistakes.

**GROUND FOUR:** PETITIONER WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS.

**Supporting FACTS:** Appointed appellate counsel failed to raise significant and obvious issues of constitutional magnitude in favor of a weak manifest weight argument, where the extant issues held a reasonable possibility of success on appeal, prejudicing the result of the appeal and positioning Petitioner for procedural defaults with regard to the extant issues.

(Habeas petition, pp. 5-6.)

### STATEMENT OF THE FACTS:

The Court of Appeals of Ohio, Ninth District, Summit County, set forth the facts of this case on direct appeal in Case Number 21336.  These binding factual findings "shall be presumed to be correct" and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998) *cert. denied*, 527 U.S. 1040 (1999).

> At trial, Robert Smarr ("Smarr") testified that he discovered a man's body in a drainage ditch under an I-76 overpass on November 17, 2001. He explained that he discovered the body because a man's leg stuck out from under a board covering the drainage ditch. Smarr further testified that he immediately notified the authorities of his discovery.
>
> Officer Eric Wells testified that he received a dispatch concerning the discovery of a body. He stated that when he arrived at the crime scene he saw a board covering the drainage ditch, and the board was "shoved off just a little[,] " thereby exposing a man's foot and leg. Officer Wells further testified that he moved the board and observed a body that had been wrapped and bound in sheets.
>
> Detective William Laughlin testified that he learned that four individuals discovered a body in a drainage ditch. He described the dimensions of the drainage ditch as 5'5" by 5'5" and 3' deep. Detective Laughlin additionally stated that the drainage ditch was filled halfway with debris.
>
> Detective Laughlin testified that he spoke with numerous individuals during the course of his investigation, including Denni Payne ("Payne" ), Kimberly Martin ("Martin"), Robert Greathouse ("Greathouse"), and

5

Jennifer Wohlford ("Wohlford"). After speaking with Payne, Detective Laughlin explained that he learned that the incident took place at 703 Thayer Avenue, which was Payne's residence. He also testified that Payne informed him that Mr. Barclay, Martin, Greathouse, Wohlford, and Maynard Nettle ("Nettle") were involved in the incident.

Detective Laughlin asserted that Martin told him that the incident took place on the day she went to the Bureau of Motor Vehicles ("BMV") to renew her driver's license. He then asserted that Martin, Greathouse, and Wohlford named the same individuals as participants in the crime; specifically, those named included Mr. Barclay, Martin, Greathouse, Wohlford, Nettle, and Payne. Finally, Detective Laughlin conceded that he did not have any physical or scientific evidence linking Mr. Barclay to the murder.

Kathy Pritchard ("Pritchard") testified that she works at the BMV as a supervisor. She asserted that Martin came in to the BMV on November 6, 2001.

The testimony of Wohlford, Payne, Martin, Greathouse, and Nettle revealed that on November 6, 2001 Mitchell Strodes ("Strodes"), the victim, arrived at 703 Thayer Avenue and asked Martin if she had any work that he could do for her. Martin told Strodes he could transport her belongings from her car to the trunk of Payne's car and rake the leaves. Thereafter, Martin, Greathouse, and Nettle proceeded to the BMV.

When they returned from the BMV, Martin asked Greathouse and Nettle to retrieve a radio that Strodes allegedly placed in the trunk of Payne's car. Wohlford testified that Greathouse and Nettle returned from the garage, and Greathouse said, "there ain't nothing in the trunk of that car." Wohlford further stated that Mr. Barclay was made aware of the situation, and Mr. Barclay said to Martin, "let me go find him for you. I will go find him for you. I will bring him back here. I will take care of him for you." Martin added that Mr. Barclay angrily stated numerous times, "I am going to kill that mother fucker for ripping you off."

Subsequently, Strodes returned to 703 Thayer Avenue and entered the residence. While inside, Martin accused Strodes of stealing her belongings, and began hitting him on the head with an ASP baton. Mr. Barclay held Strodes' arms behind his back during Martin's assault. Mr. Barclay also began hitting and kicking Strodes.

During the "beating," Mr. Barclay attempted to "tie *** up" Strodes with wire cable; however, he was unsuccessful and he became flustered. As a result, he asked if anyone had a gun and said, "if he had a gun he would just finish the job and it would be over with." Mr. Barclay then tied Strodes

6

up in a sheet and instructed the others to stand on Strodes in an attempt to knock him unconscious.

Mr. Barclay, Nettle, and Payne discussed what they should do with Strodes. Following their discussion, Mr. Barclay and Nettle carried Strodes outside and placed him in the trunk of Payne's car. Nettle drove Payne's car as Mr. Barclay gave him instructions. While en route, Nettle heard noises and realized Strodes was alive. Mr. Barclay then told Nettle to pull over onto a gravel road underneath an overpass. Nettle stated he saw Mr. Barclay hitting Strodes with a jack stand, and heard Mr. Barclay say "we don't have to worry about that, he is dead now." Nettle then explained that Mr. Barclay threw Strodes on the ground and put him in "some sort of culvert or a hole[,] " and asked Nettle to "help [him] cover [Strodes] up."

Dr. Lisa Kohler, the chief medical examiner for Summit County, testified as to the injuries Strodes sustained in the assault. In particular, Dr. Kohler described his injuries as a fractured jaw; numerous abrasions on the scalp, chest, abdomen, arms, hips, thighs, and calves; multiple bruises on the scalp, ribs, and wrist; and trauma to the brain. Although Dr. Kohler could not testify as to what instrument caused Strodes' injuries, she testified that the cause of death was "multiple blunt injuries to the head due to being beaten by an assailant [or] *** assailants[,] " and that the manner of death was homicide.

Following the State's witnesses, the defense presented its evidence and witnesses. Sandra Vinson Sanders ("Sanders") testified that she met Martin in the Summit County Jail and spoke to her regarding her case. Sanders stated that Martin told her that she controlled the men in the case and that Mr. Barclay was not involved in the murder. Sanders further commented that Martin did not show any remorse for her actions.

Detective Juanita Elton testified that she interviewed Norman Barnes ("Barnes") concerning the homicide. She stated that Barnes named five individuals that may have been involved in the homicide, but that he did not name Mr. Barclay. Detective Elton noted that Barnes obtained the names of the five individuals from Patrick Goodman ("Goodman").

Goodman testified that he has never seen Mr. Barclay act violently; however, he has seen Martin, Payne, Greathouse, and Nettle act violently. He did acknowledge that he and Mr. Barclay are friends.

Goodman stated that he was at 703 Thayer Avenue on November 6, 2001, and watched Strodes transport Martin's belongings and rake the leaves. He explained that Martin paid him to watch Strodes. He further stated that Martin later told him that she had killed Strodes and named the other individuals involved; Martin did not mention Mr. Barclay. Goodman

7

then testified that Wohlford informed him of those involved in the incident, and she, too, did not name Mr. Barclay. Finally, Goodman asserted that he watched a videotape of the murder and did not see Mr. Barclay on the videotape. He admitted that he had denied knowledge of the videotape to the police officers. He further acknowledged that he did not disclose to anyone his presence at 703 Thayer Avenue on November 6, 2001.

In response to the defense witnesses, the State called Sergeant Ray Youngkin. Sergeant Youngkin testified that he spoke with Barnes, and, based on this conversation, he began to look for the videotape. He explained that a search warrant was procured for 703 Thayer Avenue. Sergeant Youngkin asserted that the search of 703 Thayer Avenue did not uncover a videotape, a camcorder, a video recorder, or anything of that nature.

(Exhibit 11.) *State v. Barclay*, 2003 Ohio 5468, p. 6-23 (Ohio Ct. App. 2003).

## **ARGUMENT**

### **ALL OF THE GROUNDS RAISED IN PETITIONER'S PETITION FOR HABEAS CORPUS ARE PROCEDURALLY DEFAULTED AS THEY WERE NOT FAIRLY PRESENTED TO THE STATE COURTS**

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U. S. C. Sec. 2254, he must first exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court, and to all appropriate state courts prior to that, so that the state is given the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  28 U.S.C. Sec. 2254 (b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Duncan v. Henry*, 513 U.S. 364 (1995); *Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999).  In Ohio, this includes direct and delayed appeal to the Ohio Court of Appeals and the Ohio Supreme Court.  *Mackey v. Koloski,* 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini,* 424 F.2d 134, 140 (6th Cir.), *cert. denied*, 400 U.S. 906 (1970).  In order to fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity, *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).  The exhaustion

requirement is satisfied if it is clear that the claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996).

Procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error. A federal habeas corpus court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to those state courts due to procedural default or waiver. *Wainwright v. Sykes,* 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Gray v. Netherland*, 518 U.S. at 162 (1996). Failure to fairly present the federal claim, especially if the petitioner is now barred from returning to the state courts with it, waives the claim for the purposes of federal habeas corpus review. *Gray v. Netherland*, 518 U.S. at 162. The habeas petitioner has the burden of overcoming this bar by showing cause for the default and actual prejudice. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

Normally, a federal habeas court will consider default in the state courts to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement of such state procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). No such statement is necessary if the relevant issues were not presented at all to the state court(s). *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

In the Sixth Circuit, procedural default is generally analyzed under the four-part test articulated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). This test requires the court to determine (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural

9

sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose federal review; and (4) whether the petitioner can demonstrate cause for not complying with the procedural rule and actual prejudice resulting from the alleged constitutional error. *Id. See, also, Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998).

In order to show cause, petitioner must prove "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. at 722, 753 (1991); *Shorter v. Ohio Dept. of Rehab. and Corrections*, 180 F.3d 723, 725 (6th Cir. 1999). Prejudice exists where, but for error, the defendant (petitioner) "might not have been convicted", *Reed v. Ross*, 486 U.S. 1 (1984), or the errors undermined the accuracy of guilt, *Smith v. Murray*, 477 U.S. 527, 538-539 (1986). In *Coleman*, 501 U.S. at 748, the Court stated that the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct "a fundamental miscarriage of justice." A fundamental miscarriage of justice is usually interpreted to mean that an innocent person was convicted. *Sawyer v. Whitley*, 505 U.S. at 339, n. 6.

As his first ground for relief, Barclay claims that he was "twice tried and convicted of the same offense, in violation of double jeopardy". Next, Barclay asserts that his "indictment was constructively amended, duplicitous and multiplicitous, and failed to give reasonable notice of the substance of the charges against him". Additionally, Barclay raises ineffective assistance of trial counsel as his third claim. However, he failed to raise any of these issues in his direct appeal. The only issue raised in his direct appeal was that the conviction was against the manifest weight of the evidence.

None of the claims in his petition even resemble that raised in his direct appeal. In light of the above, the first and second factors of the *Maupin* test were met when Barclay deprived the Ohio appellate courts with any opportunity to consider his first through third claims.

In his fourth ground for relief, Barclay claims that he was deprived effective assistance of appellate counsel. While this claim was raised in the state court in Barclay's application to reopen his direct appeal, his 26(B) motion was not timely filed. Ohio Appellate Rule 26(B) requires an application to reopen an appeal to be filed "within ninety days from the journalization of the appellate judgment unless the applicant shows good cause for filing at a later date". The decision of the Court of Appeals for the Ninth Judicial District was filed on October 15, 2003. The deadline to file a timely application to reopen his appeal was January 13, 2004. However, Barclay did not file his application until February 2, 2004. Furthermore, Barclay failed to establish cause for his delay in filing. The appellate court enforced its procedural rule when it denied his application to reopen as it was untimely filed. As such, the first and second prongs of the *Maupin* test have been met for Barclay's fourth ground for relief.

The third *Maupin* criterion has been met as the procedural rule of waiver is an adequate and independent state ground to bar habeas claims. As such, Barclay's failure to present his first, second, and third claims to the state courts establishes an adequate and independent state ground to bar these claims in this habeas action. Additionally, the appellate court's denial of Barclay's application to reopen his appeal is an adequate and independent ground to bar this claim. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the

11

earliest possible opportunity. *See, Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Barclay failed to present any of his claims to the state court at his earliest possible opportunity.

Fourth, since Barclay failed to fairly present any of his claims to the Ohio appellate courts, he is required to demonstrate both cause and prejudice. To date, Barclay has not even attempted to establish cause or prejudice for his procedural default. Under these circumstances the *Maupin* criteria has been entirely satisfied.

Beyond the four part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary habeas corpus case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Murray*, 477 U.S. at 496. Here, Barclay has not asserted his innocence.

As Barclay's first, second, and third claims were not raised on appeal, and his fourth claim was procedurally defaulted as his application for reopening his direct appeal was not timely filed, he is foreclosed from raising any of these claims now in this federal habeas corpus action.

**CONCLUSION**

The Respondent moves this honorable federal habeas corpus court to dismiss the habeas corpus petition for the reasons set forth herein.  Since this case can be decided from the record, no further hearing should be necessary.  *Keeney v. Tamayo-Reyes,* 504 U. S. 1 (1992)*; Williams v. Taylor*, 529 U.S. 420 (2000)*.*  This is not a waiver of hearing.

    Respectfully submitted,

    JIM PETRO (0022096)
    Ohio Attorney General


    s/Stephanie Warner Bircher
    STEPHANIE WARNER BIRCHER (0072309)
    Assistant Attorney General
    Trial Attorney
    Corrections Litigation Section
    150 East Gay Street, 16th Floor
    Columbus, Ohio 43215
    Phone: (614) 644-7233
    Fax: (614) 728-9327
    swarnerbircher@ag.state.oh.us


**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Respondent's Answer/Return of Writ* was sent to Mark Barclay, #343-816, Mansfield Correctional Institution, P.O. Box 788, Mansfield, Ohio 44901-0788, via first class U.S. mail, on the 21st day of September, 2005.


    s/Stephanie Warner Bircher
    STEPHANIE WARNER BIRCHER (0072309)
    Assistant Attorney General