

DIANA ZALESKI

2002 FEB 12 PM 2:03

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO

INDICTMENT TYPE: DIRECT

CASE NO. 2002-02-0305 A,B,C,D,E

INDICTMENT FOR:

A) MURDER (1) 2903.02(B); KIDNAPPING (1) 2905.01(A)(3); TAMPERING WITH EVIDENCE (1) 2921.12(A)(1); ABUSE OF A CORPSE (1) 2927.01
B) MURDER (1) 2903.02(B); KIDNAPPING (2) 2905.01(A)(3); TAMPERING WITH EVIDENCE (1) 2921.12(A)(1); ABUSE OF A CORPSE (1) 2927.01
C) AGGRAVATED MURDER (1) 2903.01(A); KIDNAPPING (2) 2905.01(A)(3); TAMPERING WITH EVIDENCE (1) 2921.12(A)(1); ABUSE OF A CORPSE (1) 2927.01
D) MURDER (1) 2903.02(B); KIDNAPPING (1) 2905.01(A)(3); TAMPERING WITH EVIDENCE (1) 2921.12(A)(1); ABUSE OF A CORPSE (1) 2927.01
E) AGGRAVATED MURDER (1) 2903.01(A); KIDNAPPING (2) 2905.01(A)(3); TAMPERING WITH EVIDENCE (1) 2921.12(A)(1); ABUSE OF A CORPSE (1) 2927.01

In the Common Pleas Court of Summit County, Ohio, of the term of JANUARY in the year of our Lord, Two Thousand and Two,

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, being duly impaneled and sworn and charged to inquire of and present all offenses whatever committed within the limits of said County, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO,

## COUNT ONE

DO FIND AND PRESENT that **C) MARK A. BARCLAY and E) MAYNARD W. NETTLE II** on or about the 6th day of November, 2001, in the County of Summit and State of Ohio, aforesaid, did commit the crime of **AGGRAVATED MURDER** in that they did purposely, and with prior calculation and design, cause the death of [redacted], in violation of Section 2903.01(A) of the Ohio Revised Code, A SPECIAL FELONY, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.

EXHIBIT
tabbies
1


CASE NO. 2002-02-0305 A,B,C,D,E
PAGE TWO OF THREE

**COUNT TWO**

And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT, that **A) KIMBERLY A. MARTIN, B) DENNI B. PAYNE, and D) ROBERT E. GREATHOUSE** on or about the 6th day of November, 2001, in the County of Summit aforesaid, did commit the crime of **MURDER** in that they did cause the death of ██████ as a proximate result of **A) KIMBERLY A. MARTIN, B) DENNI B. PAYNE, and D) ROBERT E. GREATHOUSE** committing Felonious Assault, an offense of violence that is a Felony of the First or Second Degree, in violation of Section 2903.02(B) of the Ohio Revised Code, A SPECIAL FELONY, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.

**COUNT THREE**

And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT, that **A) KIMBERLY A. MARTIN, B) DENNI B. PAYNE, C) MARK A. BARCLAY, D) ROBERT E. GREATHOUSE, and E) MAYNARD W. NETTLE II** on or about the 6th day of November, 2001, in the County of Summit aforesaid, did commit the crime of **KIDNAPPING** in that they did, by force, threat, or deception, restrain the liberty of ██████ to terrorize, or to inflict serious physical harm on the victim, and ██████ was not released in a safe place unharmed, in violation of Section 2905.01(A)(3) of the Ohio Revised Code, A FELONY OF THE FIRST DEGREE, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.

**COUNT FOUR**

And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT, that **B) DENNI B. PAYNE, C) MARK A. BARCLAY, and E) MAYNARD W. NETTLE II** on or about the 6th day of November, 2001, in the County of Summit aforesaid, did commit the crime of **KIDNAPPING** in that they did, by force, threat, or deception, remove ██████ from the place where he was found, to terrorize or to inflict serious physical harm on the victim or another, and ██████ was not released in a safe place unharmed, in violation of Section 2905.01(A)(3) of the Ohio Revised Code, A FELONY OF THE FIRST DEGREE, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.



CASE NO. 2002-02-0305 A,B,C,D,E
PAGE THREE OF THREE

**COUNT FIVE**

And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT, that **A) KIMBERLY A. MARTIN, B) DENNI B. PAYNE, and D) ROBERT E. GREATHOUSE** on or about the 6th day of November, 2001, in the County of Summit aforesaid, did commit the crime of **TAMPERING WITH EVIDENCE** in that they did, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, alter, destroy, conceal, or remove any record, document, or thing, to wit: evidence of the murder of [redacted] including but not limited to bodily fluids, with purpose to impair its value or availability as evidence in such proceeding or investigation, in violation of Section 2921.12(A)(1) of the Ohio Revised Code, A FELONY OF THE THIRD DEGREE, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.

**COUNT SIX**

And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT, that **A) KIMBERLY A. MARTIN, B) DENNI B. PAYNE, C) MARK A. BARCLAY, D) ROBERT E. GREATHOUSE, and E) MAYNARD W. NETTLE II** on or about the 6th day of November, 2001, in the County of Summit aforesaid, did commit the crime of **ABUSE OF A CORPSE** in that they did, without authorization by law, treat a human corpse in a way that would outrage reasonable community sensibilities, in violation of Section 2927.01 of the Ohio Revised Code, A FELONY OF THE FIFTH DEGREE, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Ohio.

SHERRI BEVAN WALSH

SHERRI BEVAN WALSH, Prosecutor MEC/dg
County of Summit, Ohio MEC

Prosecutor, County of Summit, by

Michael E Carroll

Assistant Prosecuting Attorney

[signature]

Grand Jury Foreperson/Deputy Foreperson

A TRUE BILL

COPY

DIANA ZALESKI
2002 FEB 25 AM 11: 57
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
COUNTY OF SUMMIT

JANUARY Term 20 02

THE STATE OF OHIO
vs.
MARK A. BARCLAY

No. CR 02 02 0305 (C)

**JOURNAL ENTRY**
**OF ARRAIGNMENT**

Indictment for: AGGRAVATED MURDER (1), KIDNAPPING (2), ABUSE OF A CORPSE (1)

THIS DAY, to-wit: The 13th day of February, A.D., 2002, came the Prosecuting Attorney on behalf of the State of Ohio, and the Defendant, MARK A. BARCLAY, being in Court with counsel, DAVID DREW, who was appointed, and arraigned upon said indictment, the reading thereof having been waived, for plea thereto says he is "NOT GUILTY" as he stands charged therein, and puts himself upon the county, and the Prosecuting Attorney does the same.

The bond as previously set in the Municipal Court, in the amount of $1,000,000.00 to be a 10% appearance bond, shall continue, and all bond documents shall be transferred to the Summit County Clerk of Courts for Common Pleas.

IT IS HEREBY ORDERED that this case be assigned to **JUDGE SCHNEIDERMAN** by administrative assignment.

Defendant was remanded to the Summit County Jail to await pretrial set for February 27, 2002 at 1:00 P.M.

APPROVED:
February 19, 2002
ds

JOHN H. SHOEMAKER, Magistrate
General Division
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Kevin Mayer
Criminal Assignment
Attorney David Drew
Booking

EXHIBIT
tabbies
2

COPY

DIANA ZALESKI

2002 OCT -8 PM 12: 52

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| THE STATE OF OHIO, | ) | CASE NO. CR 02 02 0305(C) |
| Plaintiff, | ) | JUDGE TED SCHNEIDERMAN |
| vs. | | |
| MARK A. BARCLAY, | ) | NOTICE OF ALIBI |
| Defendant, | ) | |

Now comes the Defendant, Mark Barclay, by and through counsel, who gives notice to the Summit County Prosecutor that he intends to use the defense of alibi during his trial, and specifically, his alibi states that he was in the Summit County Jail as an inmate at the time of the alleged homicide in the instant case.

KERRY O'BRIEN - No. 0025304
Attorney for Defendant
423 Key Bldg.
Akron, OH 44308
(330) 762-5500
(330) 762-2011 fax
and

ANNALISA STUBBS WILLIAMS
Attorney for Defendant

EXHIBIT
3

COPY

CERTIFICATION

I hereby certify that I have hand delivered a copy of the foregoing Notice of Alibi to Assistant Prosecuting Attorney Mike Carroll of the Summit County Prosecutor's Office, 53 University Avenue, Akron, OH 44308, on this 7th day of October, 2002.

KERRY O'BRIEN - No. 0025304
Attorney for Defendant,
Mark A. Barclay,
423 Key Bldg.
159 S. Main St.
Akron, OH 44308
(330) 762-5500
(330) 762-2011 fax

COPY

DIANA ZALESKI
2002 OCT 28 AM 7:45
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

SUMMIT COUNTY, OHIO

- - -

THE STATE OF OHIO, ) CASE NO. 02-[illegible]-0305
)
versus ) VERDICT COUNT ONE
) MURDER
MARK A. BARCLAY, )
)
Defendant. ) JUDGE TED SCHNEIDERMAN

- - -

We, the Jury, being duly impaneled and sworn, find the Defendant, Mark A. Barclay, * Guilty of the offense of MURDER.

And we render our verdict upon the concurrence of twelve members of our Jury. Each juror concurring in the verdict signs his/her name this 24th day of October, 2002.

* Insert in ink the word(s) "guilty" or "not guilty"

1. Cynthia M Carroll
2. Marilyn [illegible]
3. [illegible] Formanek
4. [illegible]
5. Kimberly [illegible]
6. Thomas [illegible]
7. [illegible]
8. Robert [illegible]
9. [illegible]
10. [illegible] Barker
11. [illegible]
12. [illegible]

EXHIBIT
4

COPY

DIANA ZALESKI

2002 OCT 28 AM 7:45

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

SUMMIT COUNTY, OHIO

THE STATE OF OHIO, ) CASE NO. 02-02-0305

versus ) VERDICT - COUNT TWO KIDNAPPING

MARK A. BARCLAY,

Defendant. ) JUDGE TED SCHNEIDERMAN

We, the Jury, being duly impaneled and sworn, find the Defendant, Mark A. Barclay, * Guilty of the offense of KIDNAPPING.

We further find the Defendant ** Did Not release Mitchell Shoedes in a safe place unharmed.

And we render our verdict upon the concurrence of twelve members of our Jury. Each juror concurring in the verdict signs his/her name this 25th day of October, 2002.

* Insert in ink the word(s) "guilty" or "not guilty"
** Insert in ink the word(s) "did" or "did not"

1. Cynthia M Carroll
2. Marilyn Milistich
3. [illegible] Formanek
4. [illegible]
5. Kimberly McElroy
6. [illegible]
7. [illegible]
8. Robert F Ohegel
9. [illegible]
10. Carolyn [illegible] Barker
11. Marjorie Griges
12. [illegible]

COPY

DIANA ZALESKI
2002 OCT 28 AM 7:45
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

SUMMIT COUNTY, OHIO

- - -

| | | |
|---|---|---|
| THE STATE OF OHIO, | ) | CASE NO. 02-02-0305 |
| versus | ) | VERDICT - COUNT THREE KIDNAPPING |
| MARK A. BARCLAY, | ) | |
| Defendant. | ) | JUDGE TED SCHNEIDERMAN |

- - -

We, the Jury, being duly impaneled and sworn, find the Defendant, Mark A. Barclay, * Guilty of the offense of KIDNAPPING.

We further find the Defendant ** Did Not release Mitchell Rhodes in a safe place unharmed.

And we render our verdict upon the concurrence of twelve members of our Jury. Each juror concurring in the verdict signs his/her name this 24th day of October, 2002.

* Insert in ink the word(s) "guilty" or "not guilty"
** Insert in ink the word(s) "did" or "did not"

1. Cynthia M. Carroll
2. Marilyn Miletich
3. Joan Tomanek
4. Judith Ann [illegible]
5. Kimberly M. [illegible]
6. Thomas [illegible]
7. [illegible signature]
8. Robert F. [illegible]
9. [illegible signature]
10. Carolyn C. Barker
11. Marlene [illegible]
12. [illegible signature]

COPY

DIANA ZALESKI
2002 OCT 28 AM 7:45
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

SUMMIT COUNTY, OHIO

- - -

| | | |
|---|---|---|
| THE STATE OF OHIO, | ) | CASE NO. 02-02-0305 |
| versus | ) | VERDICT - COUNT FOUR ABUSE OF A CORPSE |
| MARK A. BARCLAY, | ) | |
| Defendant. | ) | JUDGE TED SCHNEIDERMAN |

- - -

We, the Jury, being duly impaneled and sworn, find the Defendant, Mark A. Barclay, * Guilty of the offense of ABUSE OF A CORPSE.

And we render our verdict upon the concurrence of twelve members of our Jury. Each juror concurring in the verdict signs his/her name this 24th day of October, 2002.

* Insert in ink the word(s) "guilty" or "not guilty"

| | |
|---|---|
| 1 Cynthia M. Carroll | 7 Daniel Chisholm |
| 2 Marilyn Miletich | 8 Robert J. [illegible] |
| 3 Joan Formanek | 9 [illegible] |
| 4 [illegible] Ann Kling | 10 Carolyn C. Barker |
| 5 Kimberly M. [illegible] | 11 Marlaine Grieg[illegible] |
| 6 Thomas [illegible] Jr. | 12 [illegible] |



# IN THE COURT OF COMMON PLEAS
# COUNTY OF SUMMIT

DIANA ZALESKI
2002 OCT 25 AM 8:44
SUMMIT COUNTY
CLERK OF COURTS

SEPTEMBER Term 20 02

THE STATE OF OHIO

vs.

MARK A. BARCLAY

No. CR 02 02 0305 (C)

## JOURNAL ENTRY

THIS DAY, to-wit: The 24th day of October, A.D., 2002, now comes the Prosecuting Attorney on behalf of the State of Ohio, the Defendant, MARK A. BARCLAY, being in Court with counsel, KERRY O'BRIEN and ANNALISA WILLIAMS, for trial herein. Heretofore on October 15, 2002, a Jury was duly empanelled and sworn, and the trial commenced and not being completed, adjourned and reconvened on October 17, 18, and 21, 2002, and concluded on October 22, 2002, at which time the Jury having heard the testimony adduced by both parties hereto, the arguments of counsel and the charge of the Court, retired to their room for deliberation.

And thereafter, to-wit: On October 24, 2002 at 9:25 A.M., said Jury came again into the Court and returned their verdict in writing finding said Defendant GUILTY of the crime of AGGRAVATED MURDER, as contained in Count 1 of the Indictment; GUILTY of the crime of KIDNAPPING, as contained in Counts 3 and 4 of the Indictment; and GUILTY of the crime of ABUSE OF A CORPSE, as contained in Count 6 of the Indictment, which offenses occurred on or about November 6, 2001.

Defendant's sentencing hearing was held pursuant to O.R.C. 2929.19. The Defendant was afforded all rights pursuant to Crim R. 32. The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C. 2929.12.

Thereupon, the Court inquired of the said Defendant if he had anything to say why judgment should not be pronounced against him; and having nothing but what he had already said, and showing no good and sufficient cause why judgment should not be pronounced:

The Court further finds the following pursuant to O.R.C. 2929.13(B):

(1) prior felony convictions;

(2) extensive misdemeanor record;

(3) on post-release control at the time of the offense;

(4) likely to re-offend;

(5) does not show proper remorse;

(6) failure to impose a prison sentence would demean the seriousness of the Defendant's conduct;

(7). A prison sentence is required to adequately protect the public from future crime by the Defendant; AND

EXHIBIT
tabbles
5

The Court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11.

IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT that the Defendant, MARK A. BARCLAY, be committed to the Ohio Department of Rehabilitation and Corrections at Grafton, Ohio, for a definite term of Fifteen (15) Years to LIFE, which is a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of AGGRAVATED MURDER, Ohio Revised Code Section 2903.01(A), a special felony; for a definite term of Eight (8) Years on each of two counts, which are not mandatory terms pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of KIDNAPPING, Ohio Revised Code Section 2905.01(A)(3), felonies of the first (1st)

COPY

No. ______

Journal ______ Page ______

COMMON PLEAS COURT

COUNTY OF SUMMIT

JOURNAL ENTRY

THE STATE OF OHIO

vs.

Entered ______, 20 ______

Hon. ______ Judge Presiding

36706

degree; and for a definite term of Ten (10) Months, which is not a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of ABUSE OF A CORPSE, Ohio Revised Code Section 2927.01, a felony of the fifth (5th) degree, and that the said Defendant pay the costs of this prosecution for which execution is hereby awarded; said monies to be paid to the Summit County Clerk of Courts, County Safety Building, 53 University Avenue, Akron, Ohio 44308-1662.

The Court further finds, pursuant to O.R.C. 2929.14(E)(3), that consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses; the crimes were committed while under post-release control; the harm was so great or unusual that single term does not adequately reflect the seriousness of the conduct; and consecutive terms are needed to protect the public.

IT IS FURTHER ORDERED that the sentence imposed in Counts 2, 3, and 4 be served CONCURRENTLY and not consecutively with each other, but CONSECUTIVELY with Count 1.

IT IS FURTHER ORDERED, pursuant to the above sentence, that the Defendant be conveyed to the Lorain Correctional Institution at Grafton, Ohio, to commence the prison intake procedure.

After release from prison, the Defendant is ordered subject to post-release control to the extent the parole board may determine as provided by law. Defendant is ORDERED to pay all prosecution costs.

IT IS FURTHER ORDERED that the Defendant be given credit for 345 days served in the Summit County Jail as of the date of sentencing, October 24, 2002, as agreed to by all parties, to be applied to Count 1.

Thereupon, the Court informed the Defendant of his right to appeal pursuant to Rule 32A2, Criminal Rules of Procedure, Ohio Supreme Court, and further the Court appoints Attorney NICK SWYRYDENKO as counsel to represent the said Defendant for purposes of appeal due to said Defendant's indigency.

APPROVED:
October 24, 2002
pmw15

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Court Convey
Summit County Sheriff's Office
Kris Gowens, Court Reporter, 2nd Floor

COPY

DIANA ZALESKI

2002 OCT 28 PM 12: 54

SUMMIT COUNTY
CLERK OF COURTS

# IN THE COURT OF COMMON PLEAS
# COUNTY OF SUMMIT

SEPTEMBER Term 20 02

THE STATE OF OHIO

vs.

MARK A. BARCLAY

No. CR 02 02 0305 (C)

## JOURNAL ENTRY

THIS DAY, to-wit: The 25th day of October, A.D., 2002, upon due consideration of this Court, IT IS HEREBY ORDERED that the Journal Entry dated October 24, 2002 be amended to read in part as follows:

"THIS DAY, to-wit: The 24th day of October, A.D., 2002, now comes the Prosecuting Attorney on behalf of the State of Ohio, the Defendant, MARK A. BARCLAY, being in Court with counsel, KERRY O'BRIEN and ANNALISA WILLIAMS, for trial herein.

**Prior to the trial and upon Motion of the Prosecuting Attorney on behalf of the State of Ohio, the Court hereby amends Count 1 of the Indictment to the lesser and included offense of MURDER, a felony of the first (1st) degree, by deleting reference to prior calculation and design.**

Heretofore on October 15, 2002, a Jury was duly empanelled and sworn, and the trial commenced and not being completed, adjourned and reconvened on October 17, 18, and 21, 2002, and concluded on October 22, 2002, at which time the Jury having heard the testimony adduced by both parties hereto, the arguments of counsel and the charge of the Court, retired to their room for deliberation.

And thereafter, to-wit: On October 24, 2002 at 9:25 A.M., said Jury came again into the Court and returned their verdict in writing finding said Defendant GUILTY of the crime of **MURDER**, as contained in **the amended** Count 1 of the Indictment; GUILTY of the crime of KIDNAPPING, as contained in Counts 3 and 4 of the Indictment; and GUILTY of the crime of ABUSE OF A CORPSE, as contained in Count 6 of the Indictment, which offenses occurred on or about November 6, 2001.

Defendant's sentencing hearing was held pursuant to O.R.C. 2929.19. The Defendant was afforded all rights pursuant to Crim R. 32. The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C. 2929.12.

Thereupon, the Court inquired of the said Defendant if he had anything to say why judgment should not be pronounced against him; and having nothing but what he had already said, and showing no good and sufficient cause why judgment should not be pronounced:

The Court further finds the following pursuant to O.R.C. 2929.13(B):

(1) prior felony convictions;

(2) extensive misdemeanor record;

(3) on post-release control at the time of the offense;

(4) likely to re-offend;

(5) does not show proper remorse;

(6) failure to impose a prison sentence would demean the seriousness of the Defendant's conduct;

(7) A prison sentence is required to adequately protect the public from future crime by the Defendant; AND

EXHIBIT
tabbies
6

The Court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11.

COPY

10

Journal __________ Page ______

No. ________

**COMMON PLEAS COURT**

COUNTY OF SUMMIT

**JOURNAL ENTRY**

THE STATE OF OHIO

vs.

Entered __________, 20 ____

Hon. __________ **Judge Presiding**

36708

IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT that the Defendant, MARK A. BARCLAY, be committed to the Ohio Department of Rehabilitation and Corrections at Grafton, Ohio, for a definite term of Fifteen (15) Years to LIFE, which is a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of **MURDER**, Ohio Revised Code Section **2903.02**, a **felony of the first (1st) degree . . .**"

APPROVED:
October 25, 2002
pmw16

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Court Convey
Summit County Sheriff's Office
Kris Gowens, Court Reporter, 2nd Floor

COPY

DIANA ZALESKI
2002 NOV -5 AM 11:25
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
COUNTY OF SUMMIT

SEPTEMBER Term 20 02

THE STATE OF OHIO

vs.

MARK A. BARCLAY

No. CR 02 02 0305 (C)

JOURNAL ENTRY

THIS DAY, to-wit: The 4th day of November, A.D., 2002, upon due consideration of this Court, IT IS HEREBY ORDERED that the Journal Entry dated October 24, 2002 and filed October 25, 2002, be amended to read in part as follows:

"IT IS FURTHER ORDERED that the sentence imposed in Counts 3, 4, and **6** be served CONCURRENTLY and not consecutively with each other, but CONSECUTIVELY with Count 1."

APPROVED:
November 4, 2002
pmw17

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Convey
SCSO
Kris Gowens, Court Reporter, 2nd Floor

EXHIBIT
tabbies
7

COPY

DANIEL M. HORRIGAN? ZALESKI

2002 NOV 22 AM 8:43

SUMMIT COUNTY
CLERK OF COURTS

2002 NOV 22 AM 9:08

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR-02-02-0305(C) |
| | ) | |
| Plaintiff/Appellee | ) | JUDGE SCHNEIDERMAN |
| | ) | |
| v. | ) | |
| | ) | |
| MARK A. BARCLAY | ) | NOTICE OF APPEAL |
| | ) | |
| Defendant/Appellant | ) | 21336 |

Now comes the Defendant, MARK A. BARCLAY, by and through court-appointed counsel, and hereby enters his NOTICE OF APPEAL to the Ninth District Court of Appeals from the final judgment of conviction and sentence entered in this cause on October 25, 2002. Costs are to be waived due to Defendant's indigency.

NICHOLAS SWYRYDENKO (0042017)
Attorney for Defendant/Appellant
Ridgewood Centre, Suite 105
1000 S. Cleveland-Massillon Rd.
Akron, Ohio 44333
(330) 666-6400

EXHIBIT
8

COPY .

CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was hand-delivered to: Summit County Prosecutor, 53 University Ave., Akron, OH 44308, this 22 day of NOV., 2002.

NICHOLAS SWYRYDENKO
Attorney for Defendant/Appellant

COPY

COURT OF APPEALS
2003 MAY 14 PM 2:49
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT
SUMMIT COUNTY, OHIO

STATE OF OHIO )
)
Plaintiff/Appellee )
) SUMMIT COUNTY
v. ) APPEAL NO. 21336
)
MARK A. BARCLAY )
)
Defendant/Appellant )

---

ON APPEAL FROM
THE SUMMIT COUNTY COURT OF COMMON PLEAS
CASE NO. CR-02-02-0305(C)

---

BRIEF OF DEFENDANT/APPELLANT
MARK A. BARCLAY

---

NICHOLAS SWYRYDENKO (0042017)
SUITE 105
1000 S. CLEVELAND-MASSILLON RD.
AKRON, OH 44333
330-666-6400
ATTORNEY FOR APPELLANT

SUMMIT CTY. PROSECUTOR
53 UNIVERSITY AVE
AKRON, OHIO 44308
330-643-2788

ATTORNEY FOR APPELLEE

EXHIBIT
tabbies
9

## TABLE OF CONTENTS

ASSIGNMENT OF ERROR .......... i

ISSUES PRESENTED FOR REVIEW .......... i

TABLE OF AUTHORITIES .......... i

STATEMENT OF THE CASE AND FACTS .......... 1

LAW AND ARGUMENT .......... 7

PROOF OF SERVICE .......... 12

**APPENDIX:**

Notice of Appeal 1

Journal Entry of October 25, 2002 2-3

Journal Entry of October 28, 2002 4-5

Journal Entry of November 5, 2002 6

R.C.2923.03 7

COPY

## ASSIGNMENT OF ERROR

**APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

Statement of Issue Presented:

1) Whether Appellant's convictions were against the manifest weight of the evidence?

## TABLE OF AUTHORITIES

*State v. Otten* (1986), 33 Ohio App.3d 339 7

R.C.2923.03 11

## STATEMENT OF THE CASE AND FACTS

On November 17, 2001, the body of a man later identified as Mitchell Strodes was found in a culvert below a highway bridge in Akron, Ohio. (TOP at 13-14, 36). The body was wrapped in sheets, and covered by a board. (TOP at 17-18). An autopsy revealed that the cause of death was multiple blunt injuries to the head by an assailant or assailants. (TOP at 5786-577). The time of death was determined to have been up to two weeks earlier. (TOP at 578).

Police investigations into Mr. Strode's death eventually lead to the arrest and indictment of five people on multiple charges: Maynard W. Nettle, Kimberly A. Martin, Denni B. Payne, Robert E. Greathouse, and Appellant Mark A. Barclay. As relevant herein, Appellant was charged with Aggravated Murder, R.C.2903.01, later reduced at trial upon motion of the state to Murder, R.C.2903.02 (TOP at 11), two counts of Kidnapping, R.C.2905.01(A)(3), and Abuse of a Corpse, R.C.2927.01. Prior to trial, all of Appellant's co-defendants, all charged similarly, plead guilty to reduced charges and sentences on the condition that they testify at trial.

Trial in the Summit County Court of Common Pleas commenced on October 15, 2002. At trial, there was no physical or forensic evidence presented to link Appellant to these crimes. The only evidence presented against Appellant was the testimony of his co-defendants and one other witness who had been charged separately with misdemeanor failure to report a crime and obstruction of justice for her involvement.

Jennifer Wohlford testified that on November 6, 2001, she was at Denni Payne's house at 703 Thayer Street in Akron, Ohio. (TOP at 178). Kimberly Martin was there, and before Martin left to get license plates in Canton, Mitchell Strodes arrived at the house. Strodes asked Martin if there was any work he could do for her, and Martin told him to transfer some of her belongings from one car

COPY

to another car in the garage. (TOP at 179). Wohlford stayed at the house to prepare dinner while Martin, Nettle, and Greathouse left for Canton. (TOP at 180).

When Martin, Nettle, and Greathouse returned to Payne's house, Martin discovered that most of the items she had asked Strodes to transfer were missing. (TOP at 182-183). Martin began yelling in anger about Strodes, when Appellant allegedly arrived at the house. Appellant allegedly offered to go find Strodes for Martin, and to "take care of him for you". (TOP at 183-184). Instead, Strodes returned to the house at that time. (TOP at 184). Martin began yelling at Strodes, who denied taking anything. Martin then grabbed an ASP[1] from somewhere and hit Strodes in the head. (TOP at 185). Wohlford ran upstairs, and when things got quiet, she came back down. She then allegedly saw Appellant holding Strodes, while Martin continued to yell and punch Strodes. (TOP at 185). After running back upstairs and coming down again, Wohlford alleged that she saw Appellant punching Strodes repeatedly, so she ran upstairs a third time. (TOP at 186). When she was finally able to leave the house to go to work, Wohlford saw Strodes lying on the floor, mumbling. (TOP at 188).

Wohlford admitted that her misdemeanor charges would be dismissed for her testimony. (TOP at 191). She also admitted to a prior felony drug conviction and a misdemeanor theft conviction. (TOP at 192).

Denni Payne testified that when he came home from work on November 6, he saw Martin and Nettle in the garage talking about the missing items, and saw his car trunk open. (TOP at 209). When Martin and Nettle went into the house, Payne stayed in the garage to clean up. Payne saw Strodes walking up the driveway, and he told him that Martin wanted to see him. (TOP at 210-211). He then

[1]An ASP is a collapsible or foldable baton-like weapon used by many police officers. (TOP at 45-46).

COPY

heard a lot of commotion from the house, and tried to get inside, but the door was blocked. After finally pushing his way inside, Payne saw Appellant holding Strodes by the arms, while Martin hit Strodes with the ASP. (TOP at 211-212). After Strodes fell to the floor, Payne saw the other co-defendants take turns asking Strodes question, yelling at him, and occasionally kicking him. (TOP at 213). Payne pleaded with the others to stop, and they all took a break to smoke crack cocaine. ((TOP at 214).

Payne alleged that Appellant then began an unsuccessful attempt to tie up Strodes, then ask if anyone had a gun. (TOP at 216). The co-defendants then took turns standing on Strodes in an attempt to force the air out of him. (TOP at 217-218). Payne was asked for a sheet, so he retrieved an old painting sheet from the basement, then went outside. (TOP at 218-219). Payne then saw Barclay and Nettle carry Strodes out wrapped in the sheet, and put him in the trunk of Payne's car, which Payne backed up to the rear of the house. Appellant and Nettle allegedly then drove off. (TOP at 220-221). Strodes was still alive when he was driven away. (TOP at 223).

Payne was allowed to plead guilty to reduced charges of Involuntary manslaughter and aggravated assault, for a total sentence of five years imprisonment, in exchange for his testimony. (TOP at 225).

Kimberly Martin testified that she sold crack cocaine out of Payne's house, and that Appellant would help her out. (TOP at 284, 287-288). When she told Appellant that her things had been stolen, Appellant allegedly said "I am going to kill that motherfucker for ripping you off". (TOP at 292). Martin admitted hitting Strodes with the ASP several times, then dropping it and continuing to punch him. Martin stopped when she had an asthma attack, and Nettle, and Greathouse, and Appellant allegedly, continued the beating. (TOP at 293-294). Her testimony about subsequent events was

COPY

similar to Payne's. (TOP at 295-300).

Martin admitted to prior felony drug and trafficking convictions, as well as a misdemeanor obstruction of official business conviction. (TOP at 309). She also was allowed to plead to reduced charges of involuntary manslaughter and aggravated assault for a total sentence of six years imprisonment for her testimony. (TOP at 310).

Robert Greathouse also admitted participating in the beating, named all co-defendants as participants, and said that he heard Strodes still talking as he was put into the trunk of the car. (TOP at 373-380). Greathouse also was allowed to plead to reduced charges of involuntary manslaughter and aggravated assault for a total sentence of five years imprisonment for his testimony. (TOP at 382-383).

Maynard Nettle testified that after Strodes was put in the trunk, Appellant told him to drive and Appellant would tell him where to go. (TOP at 415). As he was driving, he heard noises coming from the trunk. (TOP at 416). When they stopped by the culvert under the bridge, Nettle tried to open the trunk, but could not because the lock was broken. As he went back into the car to look for a screwdriver, he heard a noise, and saw Appellant allegedly hitting Strode with a jack stand. Appellant allegedly said "We don't have to worry about that, he is dead now." (TOP at 417-418). They pulled the body from the trunk, placed it in the culvert, put some building material debris on top, and returned to Payne's house, where Appellant left on foot. (TOP at 418).

Greathouse was allowed to plead guilty to a reduced charge of involuntary manslaughter and one count of kidnapping for a sentence of twelve years imprisonment in return for his testimony. (TOP at 420-422).

Appellant did not take the witness stand in his own defense. However, the defense offered an alibi defense and presented witnesses on his behalf. The first, Sandra Vinson Saunders, testified that she did not know Appellant personally, but while she was in the Summit County Jail she had several conversations with Kimberly Martin about the murder and Appellant. Martin told her that Appellant had nothing to do with the murder, and that she had made a deal to testify against him for the reduced sentence. (TOP at 532-536).

Patrick Goodman testified that he knew all of the co-defendants. (TOP at 602-603). He characterized all four of Appellant's co-defendants as violent crack cocaine users. (TOP at 606-611). Appellant Barclay was not a violent person, and was a friend of Strodes. (TOP at 612-613). While Goodman was a frequent visitor to Payne's house where Martin sold cocaine, he never saw Appellant there. (TOP at 614-615). Goodman testified that he was paid by Martin to watch Strodes move items from car to car and to rake leaves in the yard. (TOP at 617-618). After completing these tasks, Goodman secured the garage and they left together. (TOP at 619).

Sometime before Thanksgiving Goodman moved into Payne's house. On Thanksgiving night, Martin confessed to Goodman that she had killed Strodes. (TOP at 625). Martin named the people that were with her in that incident, but did not name Appellant. (TOP at 626). Greathouse also told him of his involvement in the crime, but did not mention Appellant. (TOP at 629). Wohlford also talked to Goodman about the crime, and named Greathouse, Nettle, Payne, Martin, and two others named "Doug" and one Norman Barnes, but did not name Appellant. (TOP at 631). When he was living at Payne's house, Goodman was shown a videotape of the murder of Strodes, in which he saw all the co-defendants but Appellant involved in the crime. (TOP at 632-633). Although Goodman could not see the face of the person taking the videotape, he recognized his voice as a black man

COPY

known to him as Brother Man. (TOP at 663).

The jury returned verdicts of guilty on all counts. Appellant was sentenced to the mandatory fifteen years to life imprisonment for Murder, eight years on each count of Kidnapping, and ten months for Abuse of a Corpse. The sentences for Kidnapping and Abuse of a Corpse were to run concurrently, but consecutively to the sentence for Murder. (TOP at 742-743). The judgment entry was journalized on October 25, 2002 (Ex. B; Appx. at 2-3), and amended by journal entries on October 28 and November 5, 2002 (Exs. C and D; Appx. at 4-6).

COPY

## LAW AND ARGUMENT

## ASSIGNMENT OF ERROR

**APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

To determine whether a conviction is against the manifest weight of the evidence:

> An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

***State v. Otten*** (1986), 33 Ohio App.3d 339, 340. A review of the pertinent facts and evidence at trial will show that the jury lost its way and created a manifest injustice in relying on the testimony of alleged accomplices and disregarding the evidence that Appellant was not involved and was not even at the scene of the crime.

As recounted in the Statement of the Case and Facts, the relevant facts are as follow. Jennifer Wohlford testified that on November 6, 2001, she was at Denni Payne's house at 703 Thayer Street in Akron, Ohio. (TOP at 178). Kimberly Martin was there, and before Martin left to get license plates in Canton, Mitchell Strodes arrived at the house. Strodes asked Martin if there was any work he could do for her, and Martin told him to transfer some of her belongings from one car to another car in the garage. (TOP at 179). Wohlford stayed at the house to prepare dinner while Martin, Nettle, and Greathouse left for Canton. (TOP at 180).

When Martin, Nettle, and Greathouse returned to Payne's house, Martin discovered that most of the items she had asked Strodes to transfer were missing. (TOP at 182-183). Martin began yelling in anger about Strodes, when Appellant allegedly arrived at the house. Appellant allegedly

COPY

offered to go find Strodes for Martin, and to "take care of him for you". (TOP at 183-184). Instead, Strodes returned to the house at that time. (TOP at 184). Martin began yelling at Strodes, who denied taking anything. Martin then grabbed an ASP[2] from somewhere and hit Strodes in the head. (TOP at 185). Wohlford ran upstairs, and when things got quiet, she came back down. She then allegedly saw Appellant holding Strodes, while Martin continued to yell and punch Strodes. (TOP at 185). After running back upstairs and coming down again, Wohlford alleged that she saw Appellant punching Strodes repeatedly, so she ran upstairs a third time. (TOP at 186). When she was finally able to leave the house to go to work, Wohlford saw Strodes lying on the floor, mumbling. (TOP at 188).

Wohlford admitted that her misdemeanor charges would be dismissed for her testimony. (TOP at 191). She also admitted to a prior felony drug conviction and a misdemeanor theft conviction. (TOP at 192).

Denni Payne testified that when he came home from work on November 6, he saw Martin and Nettle in the garage talking about the missing items, and saw his car trunk open. (TOP at 209). When Martin and Nettle went into the house, Payne stayed in the garage to clean up. Payne saw Strodes walking up the driveway, and he told him that Martin wanted to see him. (TOP at 210-211). He then heard a lot of commotion from the house, and tried to get inside, but the door was blocked. After finally pushing his way inside, Payne saw Appellant holding Strodes by the arms, while Martin hit Strodes with the ASP. (TOP at 211-212). After Strodes fell to the floor, Payne saw the other co-defendants take turns asking Strodes question, yelling at him, and occasionally kicking him. (TOP at 213). Payne pleaded with the others to stop, and they all took a break to smoke crack cocaine. ((TOP

---

[2]An ASP is a collapsible or foldable baton-like weapon used by many police officers. (TOP at 45-46).



at 214).

Payne alleged that Appellant then began an unsuccessful attempt to tie up Strodes, then ask if anyone had a gun. (TOP at 216). The co-defendants then took turns standing on Strodes in an attempt to force the air out of him. (TOP at 217-218). Payne was asked for a sheet, so he retrieved an old painting sheet from the basement, then went outside. (TOP at 218-219). Payne then saw Barclay and Nettle carry Strodes out wrapped in the sheet, and put him in the trunk of Payne's car, which Payne backed up to the rear of the house. Appellant and Nettle allegedly then drove off. (TOP at 220-221). Strodes was still alive when he was driven away. (TOP at 223).

Payne was allowed to plead guilty to reduced charges of Involuntary manslaughter and aggravated assault, for a total sentence of five years imprisonment, in exchange for his testimony. (TOP at 225).

Kimberly Martin testified that she sold crack cocaine out of Payne's house, and that Appellant would help her out. (TOP at 284, 287-288). When she told Appellant that her things had been stolen, Appellant allegedly said "I am going to kill that motherfucker for ripping you off". (TOP at 292). Martin admitted hitting Strodes with the ASP several times, then dropping it and continuing to punch him. Martin stopped when she had an asthma attack, and Nettle, and Greathouse, and Appellant allegedly, continued the beating. (TOP at 293-294). Her testimony about subsequent events was similar to Payne's. (TOP at 295-300).

Martin admitted to prior felony drug and trafficking convictions, as well as a misdemeanor obstruction of official business conviction. (TOP at 309). She also was allowed to plead to reduced charges of involuntary manslaughter and aggravated assault for a total sentence of six years imprisonment for her testimony. (TOP at 310).

COPY

Robert Greathouse also admitted participating in the beating, named all co-defendants as participants, and said that he heard Strodes still talking as he was put into the trunk of the car. (TOP at 373-380). Greathouse also was allowed to plead to reduced charges of involuntary manslaughter and aggravated assault for a total sentence of five years imprisonment for his testimony. (TOP at 382-383).

Maynard Nettle testified that after Strodes was put in the trunk, Appellant told him to drive and Appellant would tell him where to go. (TOP at 415). As he was driving, he heard noises coming from the trunk. (TOP at 416). When they stopped by the culvert under the bridge, Nettle tried to open the trunk, but could not because the lock was broken. As he went back into the car to look for a screwdriver, he heard a noise, and saw Appellant allegedly hitting Strode with a jack stand. Appellant allegedly said "We don't have to worry about that, he is dead now." (TOP at 417-418). They pulled the body from the trunk, placed it in the culvert, put some building material debris on top, and returned to Payne's house, where Appellant left on foot. (TOP at 418).

Greathouse was allowed to plead guilty to a reduced charge of involuntary manslaughter and one count of kidnapping for a sentence of twelve years imprisonment in return for his testimony. (TOP at 420-422).

Appellant did not take the witness stand in his own defense. However, the defense offered an alibi defense and presented witnesses on his behalf. The first, Sandra Vinson Saunders, testified that she did not know Appellant personally, but while she was in the Summit County Jail she had several conversations with Kimberly Martin about the murder and Appellant. Martin told her that Appellant had nothing to do with the murder, and that she had made a deal to testify against him for the

COPY .

reduced sentence. (TOP at 532-536).

Patrick Goodman testified that he knew all of the co-defendants. (TOP at 602-603). He characterized all four of Appellant's co-defendants as violent crack cocaine users. (TOP at 606-611). Appellant Barclay was not a violent person, and was a friend of Strodes. (TOP at 612-613). While Goodman was a frequent visitor to Payne's house where Martin sold cocaine, he never saw Appellant there. (TOP at 614-615). Goodman testified that he was paid by Martin to watch Strodes move items from car to car and to rake leaves in the yard. (TOP at 617-618). After completing these tasks, Goodman secured the garage and they left together. (TOP at 619).

Sometime before Thanksgiving Goodman moved into Payne's house. On Thanksgiving night, Martin confessed to Goodman that she had killed Strodes. (TOP at 625). Martin named the people that were with her in that incident, but did not name Appellant. (TOP at 626). Greathouse also told him of his involvement in the crime, but did not mention Appellant. (TOP at 629). Wohlford also talked to Goodman about the crime, and named Greathouse, Nettle, Payne, Martin, and two others named "Doug" and one Norman Barnes, but did not name Appellant. (TOP at 631). When he was living at Payne's house, Goodman was shown a videotape of the murder of Strodes, in which he saw all the co-defendants but Appellant involved in the crime. (TOP at 632-633). Although Goodman could not see the face of the person taking the videotape, he recognized his voice as a black man known to him as Brother Man. (TOP at 663).

R.C.2923.03(D) requires that the testimony of an alleged accomplice be taken with grave suspicion and be weighed with great caution. The fact that all witnesses against Appellant plead to lesser charges and sentences in exchange for their testimony against Appellant makes their testimony highly suspicious and unreliable. As the only evidence against Appellant was the testimony of these

COPY

witnesses, Appellant's convictions should be reversed and the cause remanded for a new trial.

Respectfully submitted,

NICHOLAS SWYRYDENKO (0042017)
Attorney for Defendant/Appellant
Ridgewood Centre, Suite 105
1000 S. Cleveland-Massillon Rd.
Akron, Ohio 44333
(330) 666-6400

CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was hand-delivered to: Summit County Prosecutor, 53 University Ave., Akron, OH 44308, this 14 day of MAY, 2003.

NICHOLAS SWYRYDENKO
Attorney for Defendant/Appellant

COPY

2002 NOV 22 AM 8:43

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. CR-02-02-0305(C) |
| | ) | |
| Plaintiff/Appellee | ) | JUDGE SCHNEIDERMAN |
| | ) | |
| v. | ) | |
| | ) | |
| MARK A. BARCLAY | ) | NOTICE OF APPEAL |
| | ) | |
| Defendant/Appellant | ) | 21336 |

Now comes the Defendant, MARK A. BARCLAY, by and through court-appointed counsel, and hereby enters his NOTICE OF APPEAL to the Ninth District Court of Appeals from the final judgment of conviction and sentence entered in this cause on October 25, 2002. Costs are to be waived due to Defendant's indigency.

NICHOLAS SWYRYDENKO (0042017)
Attorney for Defendant/Appellant
Ridgewood Centre, Suite 105
1000 S. Cleveland-Massillon Rd.
Akron, Ohio 44333
(330) 666-6400



COPY

COPY

# IN THE COURT OF COMMON PLEAS
## COUNTY OF SUMMIT

DIANA ZALESKI

2002 OCT 25 AM 8:44

SUMMIT COUNTY
CLERK OF COURTS

SEPTEMBER Term 20 02

THE STATE OF OHIO
vs.
MARK A. BARCLAY

No. CR 02 02 0305 (C)

## JOURNAL ENTRY

THIS DAY, to-wit: The 24th day of October, A.D., 2002, now comes the Prosecuting Attorney on behalf of the State of Ohio, the Defendant, MARK A. BARCLAY, being in Court with counsel, KERRY O'BRIEN and ANNALISA WILLIAMS, for trial herein. Heretofore on October 15, 2002, a Jury was duly empanelled and sworn, and the trial commenced and not being completed, adjourned and reconvened on October 17, 18, and 21, 2002, and concluded on October 22, 2002, at which time the Jury having heard the testimony adduced by both parties hereto, the arguments of counsel and the charge of the Court, retired to their room for deliberation.

And thereafter, to-wit: On October 24, 2002 at 9:25 A.M., said Jury came again into the Court and returned their verdict in writing finding said Defendant GUILTY of the crime of AGGRAVATED MURDER, as contained in Count 1 of the Indictment; GUILTY of the crime of KIDNAPPING, as contained in Counts 3 and 4 of the Indictment; and GUILTY of the crime of ABUSE OF A CORPSE, as contained in Count 6 of the Indictment, which offenses occurred on or about November 6, 2001.

Defendant's sentencing hearing was held pursuant to O.R.C. 2929.19. The Defendant was afforded all rights pursuant to Crim R. 32. The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C. 2929.12.

Thereupon, the Court inquired of the said Defendant if he had anything to say why judgment should not be pronounced against him; and having nothing but what he had already said, and showing no good and sufficient cause why judgment should not be pronounced:

The Court further finds the following pursuant to O.R.C. 2929.13(B):

(1) prior felony convictions;

(2) extensive misdemeanor record;

(3) on post-release control at the time of the offense;

(4) likely to re-offend;

(5) does not show proper remorse;

(6) failure to impose a prison sentence would demean the seriousness of the Defendant's conduct;

(7) A prison sentence is required to adequately protect the public from future crime by the Defendant; AND

The Court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11.

IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT that the Defendant, MARK A. BARCLAY, be committed to the Ohio Department of Rehabilitation and Corrections at Grafton, Ohio, for a definite term of Fifteen (15) Years to LIFE, which is a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of AGGRAVATED MURDER, Ohio Revised Code Section 2903.01(A), a special felony; for a definite term of Eight (8) Years on each of two counts, which are not mandatory terms pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of KIDNAPPING, Ohio Revised Code Section 2905.01(A)(3), felonies of the first (1st)

COPY ..

COPY

Journal ______ Page ______ No. ______

COMMON PLEAS COURT
COUNTY OF SUMMIT

JOURNAL ENTRY

THE STATE OF OHIO

vs.

Entered ______, 20 ___

Hon. ______ Judge Presiding

36708

degree; and for a definite term of Ten (10) Months, which is not a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of ABUSE OF A CORPSE, Ohio Revised Code Section 2927.01, a felony of the fifth (5th) degree, and that the said Defendant pay the costs of this prosecution for which execution is hereby awarded; said monies to be paid to the Summit County Clerk of Courts, County Safety Building, 53 University Avenue, Akron, Ohio 44308-1662.

The Court further finds, pursuant to O.R.C. 2929.14(E)(3), that consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses; the crimes were committed while under post-release control; the harm was so great or unusual that single term does not adequately reflect the seriousness of the conduct; and consecutive terms are needed to protect the public.

IT IS FURTHER ORDERED that the sentence imposed in Counts 2, 3, and 4 be served CONCURRENTLY and not consecutively with each other, but CONSECUTIVELY with Count 1.

IT IS FURTHER ORDERED, pursuant to the above sentence, that the Defendant be conveyed to the Lorain Correctional Institution at Grafton, Ohio, to commence the prison intake procedure.

After release from prison, the Defendant is ordered subject to post-release control to the extent the parole board may determine as provided by law. Defendant is ORDERED to pay all prosecution costs.

IT IS FURTHER ORDERED that the Defendant be given credit for 345 days served in the Summit County Jail as of the date of sentencing, October 24, 2002, as agreed to by all parties, to be applied to Count 1.

Thereupon, the Court informed the Defendant of his right to appeal pursuant to Rule 32A2, Criminal Rules of Procedure, Ohio Supreme Court, and further the Court appoints Attorney NICK SWYRYDENKO as counsel to represent the said Defendant for purposes of appeal due to said Defendant's indigency.

APPROVED:
October 24, 2002
pmw15

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Court Convey
Summit County Sheriff's Office
Kris Gowens, Court Reporter, 2nd Floor

certify this to be a true copy of the original.
Diana Zaleski, Clerk of Courts
______ Deputy

COPY

COPY

DIANA ZALESKI

2002 OCT 28 PM 12:54

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
COUNTY OF SUMMIT

SEPTEMBER Term 20 02

THE STATE OF OHIO
vs.
MARK A. BARCLAY

No. CR 02 02 0305 (C)

JOURNAL ENTRY

THIS DAY, to-wit: The 25th day of October, A.D., 2002, upon due consideration of this Court, IT IS HEREBY ORDERED that the Journal Entry dated October 24, 2002 be amended to read in part as follows:

"THIS DAY, to-wit: The 24th day of October, A.D., 2002, now comes the Prosecuting Attorney on behalf of the State of Ohio, the Defendant, MARK A. BARCLAY, being in Court with counsel, KERRY O'BRIEN and ANNALISA WILLIAMS, for trial herein.

**Prior to the trial and upon Motion of the Prosecuting Attorney on behalf of the State of Ohio, the Court hereby amends Count 1 of the Indictment to the lesser and included offense of MURDER, a felony of the first (1st) degree, by deleting reference to prior calculation and design.**

Heretofore on October 15, 2002, a Jury was duly empanelled and sworn, and the trial commenced and not being completed, adjourned and reconvened on October 17, 18, and 21, 2002, and concluded on October 22, 2002, at which time the Jury having heard the testimony adduced by both parties hereto, the arguments of counsel and the charge of the Court, retired to their room for deliberation.

And thereafter, to-wit: On October 24, 2002 at 9:25 A.M., said Jury came again into the Court and returned their verdict in writing finding said Defendant GUILTY of the crime of **MURDER**, as contained in **the amended** Count 1 of the Indictment; GUILTY of the crime of KIDNAPPING, as contained in Counts 3 and 4 of the Indictment; and GUILTY of the crime of ABUSE OF A CORPSE, as contained in Count 6 of the Indictment, which offenses occurred on or about November 6, 2001.

Defendant's sentencing hearing was held pursuant to O.R.C. 2929.19. The Defendant was afforded all rights pursuant to Crim R. 32. The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under O.R.C. 2929.11, and the seriousness and recidivism factors under O.R.C. 2929.12.

Thereupon, the Court inquired of the said Defendant if he had anything to say why judgment should not be pronounced against him; and having nothing but what he had already said, and showing no good and sufficient cause why judgment should not be pronounced:

The Court further finds the following pursuant to O.R.C. 2929.13(B):

(1) prior felony convictions;

(2) extensive misdemeanor record;

(3) on post-release control at the time of the offense;

(4) likely to re-offend;

(5) does not show proper remorse;

(6) failure to impose a prison sentence would demean the seriousness of the Defendant's conduct;

(7) A prison sentence is required to adequately protect the public from future crime by the Defendant; AND

The Court further finds the Defendant is not amenable to community control and that prison is consistent with the purposes of O.R.C. 2929.11.



COPY

COPY

10

No. ____

Journal ____ Page ____

**COMMON PLEAS COURT**

COUNTY OF SUMMIT

**JOURNAL ENTRY**

THE STATE OF OHIO

vs.

Entered ____, 20__

Hon. ____ **Judge Presiding**

3670

IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT that the Defendant, MARK A. BARCLAY, be committed to the Ohio Department of Rehabilitation and Corrections at Grafton, Ohio, for a definite term of Fifteen (15) Years to LIFE, which is a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of **MURDER**, Ohio Revised Code Section **2903.02**, **a felony of the first (1st) degree . . .**"

APPROVED:
October 25, 2002
pmw16

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Court Convey
Summit County Sheriff's Office
Kris Gowens, Court Reporter, 2nd Floor

COPY .

COPY

DIANA ZALESKI
2002 NOV -5 AM 11:25
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
COUNTY OF SUMMIT

SEPTEMBER Term 20 02

THE STATE OF OHIO

vs.

MARK A. BARCLAY

No. CR 02 02 0305 (C)

JOURNAL ENTRY

THIS DAY, to-wit: The 4th day of November, A.D., 2002, upon due consideration of this Court, IT IS HEREBY ORDERED that the Journal Entry dated October 24, 2002 and filed October 25, 2002, be amended to read in part as follows:

"IT IS FURTHER ORDERED that the sentence imposed in Counts 3, 4, and 6 be served CONCURRENTLY and not consecutively with each other, but CONSECUTIVELY with Count 1."

APPROVED:
November 4, 2002
pmw17

TED SCHNEIDERMAN, Judge
Court of Common Pleas
Summit County, Ohio

cc: Prosecutor Mike Carroll
Criminal Assignment
Attorney Kerry O'Brien
Attorney Annalisa Williams
Booking
Convey
SCSO
Kris Gowens, Court Reporter, 2nd Floor

6

not allied offenses of similar import: State v. Hamilton, No. 474 (4th Dist.), 1990 Ohio App. LEXIS 3849.

**18.** (1990) Attempted escape is not an offense in itself under RC § 2923.02. Instead it is encompassed under RC § 2921.34: State v. Nero, No. 1392 (4th Dist.), 1990 Ohio App. LEXIS 1383.

**19.** (1989) The omission of the words "prior calculation and design" from the list of culpable mental states in RC § 2923.02(A), defining "attempt," does not preclude the prosecution of an accused for attempted aggravated murder under RC § 2903.01(A): State v. Dapice, 57 OApp3d 99, 566 NE2d 1261.

**20.** (1988) The Ohio Legislature did not eliminate the common-law defense of legal impossibility in enacting RC § 2923.02(B), the Ohio attempt statute: State v. Collins, 54 OApp3d 134, 561 NE2d 954.

**21.** (1981) Attempted theft by threat, as defined in RC §§ 2913.02(A)(4) and 2923.02(A), may be a lesser included offense of robbery as defined in RC § 2911.02(A) since (1) it is a crime of a lesser degree than robbery; (2) the greater offense of robbery cannot be committed without attempted theft by threat also having been committed; and (3) attempted theft by threat consists entirely of some, but not all, the elements of robbery: State v. Gates, 2 OApp3d 485, 2 OBR 611, 442 NE2d 1321.

**22.** (1976) In a prosecution for theft, where the defendant raises both the complete defense of lack of intent and the partial defense of failure to exert control over the allegedly stolen property, the court should charge the jury on both theft and attempted theft, since acceptance of the partial defense is compatible with a conviction of attempted theft: State v. Fann, 2 OO3d 87 (App).

**23.** (1983) Renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose: State v. Arnold, 9 OMisc2d 14, 9 OBR 434, 459 NE2d 631 (MC).

**24.** (1979) An offense of soliciting under RC § 2907.24 necessarily constitutes an attempt to commit an offense of prostitution under RC § 2907.25, and therefore there can be no such offense as attempted soliciting under the general attempt statute, RC § 2923.02: State v. Anderson, 62 OMisc 1, 16 OO3d 185, 404 NE2d 176 (MC).

## [§ 2923.02.1] § 2923.021 Repealed, 134 v H 511, § 2 [125 v S 62(125)]. Eff 1-1-74.

This section concerned sale or possession of switch or spring knife.

## § 2923.03 Complicity.

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.

(C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.

(D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

(E) It is an affirmative defense to a charge under this section that, prior to the commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose.

(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

**HISTORY: 134 v H 511 (Eff 1-1-74); 141 v H 338. Eff 9-17-86.**

**Not analogous to former RC § 2923.03 (GC § 12819-3; 115 v 189; Bureau of Code Revision, 10-1-53; 129 v 420), repealed 134 v H 511, § 2, eff 1-1-74.**

### 1974 Committee Comment to H 511

In essence, this section codifies existing case law with respect to "aiding and abetting." Under the section, an accomplice is one who solicits, procures, or conspires with another to commit an offense, aids or abets its commission, or causes an innocent or irresponsible person to commit the offense.

It is unnecessary that the principal offender be convicted before an accomplice can be convicted. An offense must actually be committed, however, before a person may be convicted as an accomplice. The single exception to this rule permits conviction as an accomplice in an attempt to commit an offense. A person accused of complicity may defend on the ground that prior to an attempt or the commission of the offense, he quit his part in it, under circumstances showing that he completely and voluntarily gave up his criminal purpose.

Accomplices are liable to prosecution and punishment as principal offenders. For example, an accomplice to aggravated murder is liable to the death penalty the same as the actual murderer.

In charging complicity, the accused may be charged specifically as an accomplice under this section, or he may be charged simply as a joint offender in the offense committed.

**Cross-References to Relat**

Affirmative defense, RC § 2
Aider or abettor not to be
Culpable mental states, RC

**Comparative Legislation**

Complicity:
18 USC § 2
CA—Penal Code § 653f
FL—Stat Ann § 777.03
IL—Comp Stat Ann ch 7
IN—Code § 35-41-2-4
KY—Rev Stat Ann §§ 50
MI—Comp Laws Ann § 7
NY—Penal Law § 20.00
PA—CSA tit 18 § 903

**Text Discussion**

Required jury instructions. O

**Forms**

Complicity. 4 OJI 523.03
Testimony of accomplice. 4

**Research Aids**

Corroboration:
**O-Jur3d:** Crim L §§ 276
**Am-Jur2d:** Consp §§ 39-
**C.J.S.:** Crim L §§ 655, 1
Participation in or procurem
**O-Jur3d:** Crim L §§ 652,
**Am-Jur2d:** Consp §§ 7-9
*West Key* No. Reference
Crim Law 510 et seq, 549

**ALR**

Acquittal of principal, or hi offense, as affecting pr and abettor. 9 ALR4th
Conspiracy to induce breach
Criminal liability of person participant, for assault or improper punishme teacher, or one in loco
Criminal responsibility, as pri than driver at time of ac ute. 62 ALR2d 1130.
Criminal responsibility of or of a kind ordinarily us knowledge that it is to purposes. 108 ALR 331
Necessity of alleging specifi as accessory before or
Necessity of, and prejudici instruction to jury as t defendant in federal cr
Offense of aiding and abetti narcotics. 47 ALR3d 1
Propriety of specific jury instr plices. 4 ALR3d 351.
Prosecutrix in incest case as 705.
Receiver of stolen goods as of corroboration. 74 Al
Right of criminal defendant t on having dealt with ot ALR5th 39.
Statute protecting minors in

